RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK WALWORTH**, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**PONCE & PONCE REALTY, INC.**, a California corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

This case addresses a disturbing trend whereby real estate companies such as Defendant Ponce & Ponce Realty, Inc. direct their real estate agents to cold call consumers without consent using autodialers and pre-recorded voice messages in violation of the Telephone Consumer Protection Act.  Plaintiff Frank Walworth ("Plaintiff Walworth" or "Walworth") brings this Class Action Complaint and Demand for Jury Trial against Defendant Ponce & Ponce Realty, Inc. ("Defendant" or "Ponce Realty") to stop Ponce Realty from directing its agents to violate the Telephone Consumer Protection Act ("TCPA"), and to obtain injunctive and

monetary relief for all persons injured by Ponce Realty's telemarketing. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Frank Walworth is a resident of Ontario, California.

2. Defendant Ponce Realty is a California corporation headquartered in San Bernardino, California. Defendant conducts business throughout this District and throughout California.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and because the wrongful conduct giving rise to this case was directed from and/or occurred in this District. Additionally, Plaintiff also resides in this District.

## TCPA BACKGROUND

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that

CLASS ACTION COMPLAINT
-3-

the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

16. According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Mar. 5, 2020).

17. Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id.*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

CLASS ACTION COMPLAINT
-5-

18. Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

19. In recent years a troubling trend has escalated in the real estate industry whereby real estate companies such as Ponce Realty are training and directing their real estate agents to purchase lists of consumer' phone numbers and to solicit their services by cold calling consumers on their cell phone without any form of consent.

20. This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls and text messages without their consent in violation of the TCPA.

## PONCE REALTY DIRECTS AND/OR RATIFIES ITS AGENTS' TCPA VIOLATIONS

21. Ponce Realty is a real estate brokerage mainly in Southern California.[3]

22. Ponce Realty is owned by brothers Jose and Ricardo Ponce who are directly involved in the training and business development of Ponce Realty agents.

23. Ponce Realty provides "Fast Track 24" to new agents which includes "tools & technology, marketing support, mentoring, coaching, sales training."[4]

---

[3] https://www.linkedin.com/company/ponce-&-ponce-realty/about/
[4] http://ponceponce.com/company-benefits/

CLASS ACTION COMPLAINT
-6-

**FAST TRACK 24**

– TOOLS & TECHNOLOGY
– MARKETING SUPPORT
– MENTORING
– COACHING
– SALES TRAINING – CLIENT CARE

24. In attracting new agents, Ponce Realty advertises that they provide "Marketing Support" to their agents including "target audience marketing telemarketing." [5]

25. In addition, Ponce Realty advertises their "Sales Training" which includes lead generation and scripts.

**MARKETING SUPPORT**

LEAD GENERATION
BRAND AWARENESS
TARGET AUDIENCE MARKETING TELEMARKETING
ONLINE MARKETING (PPC, SOCIAL MEDIA, REFERAL NETWORK)

26. Ponce Realty also provides sales training including "Scripts and role playing" and lead generation.

27. An essential part of Ponce Realty's marketing plan involves cold calling consumers to generate leads for their real estate services with a special emphasis on placing calls to consumers with *expired property listings*.

---

[5] http://ponceponce.com/company-benefits/

28. Realtors target consumers with expired property listings – which are listings that expire on the Multiple Listing Service (MLS) – since these consumers previously had a property for sale with another real estate agent, but the property did not sell. Realtors hope that by calling the cell phone numbers associated with these expired property listings (obtained from third parties that perform reverse lookups for phone numbers based on the addresses of expired listings) that they can telemarket their services to this homeowner for the homeowner to list their property with them.

29. Ponce Realty promotes specific tools and technology to their agents including theRedX, CallFire, and Cole Realty Source.

30. RedX is a real estate prospecting platform that includes leads, dialer and tools to enable agents to prospect leads. Users can purchase phone numbers (including cell phone numbers) of property owners whose listings have expired on the MLS for example, and dial them automatically to generate the most leads for their business.

31. Included with RedX is the Storm Dialer. As RedX states "Talk with more homeowners per hour with the efficiency of a dialer instead of dialing by hand."[6] In addition, RedX has a feature where RedX will automatically leave a

---

[6] https://www.theredx.com/

voicemail an agent can pre-record when a voicemail picks up so that agents can "spending time talking to consumers, not leaving voicemails."[7]

32.  Cole Realty Resource provides a service where an agent can download a prospect list based on certain parameters from Cole Realty and upload it into one of Cole Information's dial partners, including the RedX.[8]

33.  Notably, because the leads from RedX and Cole Realty Resource, including leads for expired listings, are generated through skip-tracing like technologies, purchasers of these leads do not have express consent from the leads to call them.

34.  As Ponce Realty explains, CallFire is an autodialer intended to increase the productivity of Ponce Realty agents:

> The last tool i feel can help your business is for those that like to telemarket or make calls. A auto dialer has significantly increased our productivity. We currently use Call Fire. Again there's a ton of auto dialers some are super complicated and some are simple. I chose to stick to Call Fire because of it's simplicity. When you login you click your campaign and you press start. The features it has are limited but that's what i like any person can understand how to use it in less than 5-10 minutes. Remember if you have a team or a brokerage ease of use is important since some are tech savvy while are not. An auto dialer helps me reach out to more agents and set more appointments in less time. I also used it to lead generate when i was selling real estate and it also help me make more appointments with potential clients in less time.   9, 10

---

[7] *Id.*
[8] https://www.coleinformation.com/real-estate/
[9] https://ponceponce.com/whats-technology-real-estate/
[10] http://ponceponce.com/company-benefits/

CLASS ACTION COMPLAINT
-9-

35. CallFire also gives the agents the ability to place pre-recorded voice calls:



Hosted Voice Broadcast & Automated Voice Messaging Services from CallFire [11]

36. All a CallFire user has to do is record a voice message, select all the phone numbers that should receive the message, and then press the send button.

37. All of these services – RedX, Cole Realty Resource, and CallFire – are especially relevant here, because Plaintiff received an unsolicited pre-recorded voice message call from a Ponce Realty agent regarding his expired property listing.

---

[11] https://www.youtube.com/watch?v=cNbOmvJuLFQ

## PLAINTIFF WALWORTH'S ALLEGATIONS

38. Plaintiff Walworth had a property listed for sale, but the listing expired and was removed from the MLS.

39. As a result, almost immediately, Walworth began receiving calls from realtors, including a pre-recorded voice call from a Ponce Realty agent.

40. On May 12, 2020, Walworth received a pre-recorded voicemail message on his cell phone from a Ponce Realty agent, asking Walworth to call 909-434-4059 regarding Walworth's expired property listing.

41. Walworth called 909-434-4059 back and spoke with an agent named Rachel who said the call was on behalf of Ponce & Ponce Realty.

42. Rachel told Plaintiff that she works for David Iniguez, a Ponce Realty agent[12] and provided Plaintiff with the email iniguezd@realestateponce.com.

43. In speaking with Rachel, Plaintiff confirmed that the pre-recorded voice message call was from Ponce Realty.

44. Plaintiff Walworth has never provided his cellular phone number, or any phone number to Ponce Realty, or otherwise consented to any Ponce Realty realtor placing solicitation telephone calls to his cell phone number.

45. The unauthorized call that was placed by Ponce Realty harmed Plaintiff Walworth in the form of annoyance, nuisance, and invasion of privacy,

---

[12] https://ponceponce.com/agents/david-iniguez-real-estate-agent/

and disturbed the use and enjoyment of his cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

46. Seeking redress for these injuries, Plaintiff Walworth, on behalf of himself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits pre-recorded solicitation calls and unsolicited autodialed calls to cellular telephones.

## CLASS ALLEGATIONS

47. Plaintiff Walworth brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) one or more of Defendant's realtors called, (2) for substantially the same reason Defendant's realtors called Plaintiff, (3) using a prerecorded voice message, and (4) for whom Defendant or its realtors claim (a) they obtained prior express written consent in the same manner as they claim they obtained prior express written consent to call Plaintiff, (b) they did not obtain prior express written consent, and/or (c) they obtained the person's phone number in the same manner as they claim they obtained the Plaintiff's phone number.

48. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who

properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Walworth anticipates the need to amend the Class definitions following appropriate discovery.

49. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

50. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Walworth and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

 (a) whether Defendant's real estate agents transmitted pre-recorded messages to Plaintiff Walworth and other consumers;

 (b) whether they did so with prior express written consent;

 (c) whether Defendant is vicariously liable for the telemarketing of its real estate agents; and

 (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

51. **Adequate Representation**: Plaintiff Walworth will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Walworth has no interests antagonistic to those of the Class, and Defendant has no defenses unique to the Plaintiff. Plaintiff Walworth, and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the

financial resources to do so. Neither Plaintiff Walworth nor his counsel has any interest adverse to the Class.

52. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Walworth and the Prerecorded No Consent Class)**

53. Plaintiff Walworth repeats and realleges the foregoing paragraphs of this Complaint and incorporates them by reference.

54. Defendant's agents made solicitation calls using a prerecorded voice to Plaintiff Walworth and the other members of the Prerecorded No Consent Class.

55. These prerecorded calls were sent *en masse* without the prior express

written consent of Plaintiff Walworth and the other members of the Prerecorded No Consent Class.

56. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff Walworth and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walworth, individually and on behalf of the Class, prays for the following relief:

57. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Walworth as the representative of the Class; and appointing his attorneys as Class Counsel;

58. An award of actual and/or statutory damages and costs;

59. An order declaring that Defendant's actions, as set out above, violate the TCPA;

60. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

61. Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Walworth requests a jury trial.

| | |
|---|---|
| Dated: August 11, 2020 | Respectfully submitted, |
| | By: /s/ *Rachel E. Kaufman* |
| | Rachel E. Kaufman (Cal Bar no. 259353) |
| | rachel@kaufmanpa.com |
| | KAUFMAN P.A. |
| | 400 NW 26th Street |
| | Miami, FL 33127 |
| | Telephone: (305) 469-5881 |
| | *Attorney for Plaintiff and the Class* |